IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| M.R., *et al.*, | ) |
| | ) |
|     Plaintiffs, | ) |
| | ) |
| v. | )   CIVIL ACTION 11-0245-WS-C |
| | ) |
| BOARD OF SCHOOL COMMISSIONERS | ) |
| OF MOBILE COUNTY, | ) |
| | ) |
|     Defendant. | ) |

ORDER

    This matter comes before the Court on defendant's Motion to Abstain and Dismiss (doc. 72). The Motion has been briefed and is now ripe for disposition.

**I.    Relevant Background.**

    This putative class action was brought by eight Mobile County Public School System students against the Board of School Commissioners of Mobile County (the "Board"). Plaintiffs allege infringement of their procedural due process rights under the Fourteenth Amendment, in violation of 42 U.S.C. § 1983. In particular, the Amended Complaint alleges that plaintiffs were "long-term suspended without proper notice or a hearing for minor infractions." (Doc. 91, ¶ 1.) The Amended Complaint purports to "challenge[] the custom and practice of many school administrators in the MCPSS of long-term suspending students without first providing notice … and hearings so that students and parents can challenge those suspensions, and the Board's policy of turning a blind eye to that custom." (*Id.*, ¶ 2.) Plaintiffs also challenge the Board's "supervision, training and monitoring policies and practices" (*id.*), on the theory that such policies and practices caused the alleged constitutional deprivation to occur. Plaintiffs seek injunctive and declaratory relief, but no monetary damages.

    On June 19, 2012, more than a year after it filed an Answer (doc. 6), the Board filed its Motion to Abstain and Dismiss (doc. 72). In that Motion, the Board asks this Court to abstain from hearing this case and to dismiss the Amended Complaint pursuant to the *Younger* abstention doctrine. The Board's Motion centers on the availability of judicial review of the

challenged disciplinary suspensions in Alabama juvenile courts. In that regard, Alabama law provides that "[a] juvenile court … shall have original jurisdiction in proceedings concerning any child … [w]here it is alleged that the rights of a child are improperly denied or infringed in proceedings resulting in suspension, expulsion, or exclusion from a public school." Ala. Code § 12-15-115(b)(2). There is no question that, pursuant to this statute, an Alabama juvenile court would have had jurisdiction over plaintiffs' constitutional claims had they chosen to raise them in that forum. *See, e.g., Dothan City Bd. of Educ. v. V.M.H.*, 660 So.2d 1328, 1330 (Ala.Civ.App. 1995) (rejecting school board's challenge to juvenile court jurisdiction where student was suspended for 10 days, finding that predecessor statute provided for jurisdiction in such circumstances, and concluding that "[t]o argue otherwise is to engage in sophistry"). There is likewise no debate that plaintiffs in this case never did seek judicial review in Alabama's juvenile courts pursuant to § 12-15-115(b)(2), but instead bypassed that procedure in favor of initiating judicial proceedings under 42 U.S.C. § 1983 to challenge their suspensions in federal court. The Board maintains that, under these circumstances, the *Younger* doctrine counsels in favor of abstention and dismissal of the Amended Complaint with prejudice. Plaintiffs disagree.

**II.     Analysis.**

    *A.     Timeliness of Defendant's* **Younger** *Objection.*

As a threshold matter, plaintiffs assert that the Motion to Abstain and Dismiss should be summarily denied because the Board tarried too long before filing it. Plaintiffs correctly note that considerable discovery (including numerous depositions and extensive document production) took place and this federal lawsuit proceeded for more than a year before the Board raised the *Younger* abstention issue that is the cornerstone of its Motion. Moreover, there is no question that this argument was available to the Board from the outset of this case. Certainly, the Board could have raised its *Younger* abstention argument far sooner than it did. Defendant has proffered neither explanation nor excuse for this omission.

Nonetheless, plaintiffs' timeliness objection fails because the Court is aware of no authority (and plaintiffs cite none) holding or suggesting that *Younger* abstention is barred on a timeliness / waiver / laches theory unless it is invoked at the earliest possible moment. This is not a Rule 12(b)(2) – (5) motion, and plaintiffs have not explained why it should be treated as if it were. To be sure, plaintiffs state that "abstention under *Younger* is inappropriate where 'proceedings of substance on the merits' have taken place in the federal court." (Doc. 77, at 2.)

But this construction skews the correct legal standard.  From a timing standpoint, what matters is whether state court proceedings began before "proceedings of substance on the merits" took place in federal court, <u>not</u> whether the motion to abstain was filed before such "proceedings of substance on the merits" occurred in federal court.  *See, e.g., Hawaii Housing Authority v. Midkiff*, 467 U.S. 229, 238, 104 S.Ct. 2321, 81 L.Ed.2d 186 (1984) ("*Younger* abstention is required … only when state court proceedings are initiated before any proceedings of substance on the merits have taken place in the federal court.") (citation and internal quotation marks omitted); *Old Republic Union Ins. Co. v. Tillis Trucking Co.*, 124 F.3d 1258, 1262 (11th Cir. 1997) (similar).  Plaintiffs have identified no legal authority extending and importing the *Hawaii Housing* standard into the context of evaluating the timeliness of a motion to abstain.  Thus, plaintiffs' stance that a *Younger* abstention request is untimely if it is filed after proceedings of substance on the merits have occurred in federal court appears to be devoid of legal support.  For that reason, the Court rejects plaintiffs' procedural objection to defendant's invocation of the *Younger* doctrine at this time.[1]  Just because the Board could have invoked *Younger* abstention before now does not mean that it was required to do so, or that its delay in that regard is tantamount to a waiver.

> **B.** ***Merits of Defendant's* Younger *Objection.***
>> **1.** *Overview of* Younger *Abstention Doctrine.*

---

[1] To avoid confusion, the Court notes that the *Hawaii Housing* standard is satisfied here, with regard to the relative timing of the state and federal proceedings.  As discussed *infra*, the Board's theory is that state judicial proceedings are deemed to be ongoing in this case, as a matter of law.  If state proceedings are deemed to be ongoing, then they were initiated well before any proceedings of substance on the merits in this federal action.  Accordingly, *Hawaii Housing* does not support plaintiffs' timeliness objection.  Likewise, the Court finds no merit to plaintiffs' suggestion that, insofar as the Motion to Abstain and Dismiss is rooted in Rules 12(b)(1) and (6), it is "procedurally improper because Defendants answered Plaintiffs' complaint." (Doc. 77, at 3 n.2.)  The Board's Answer clearly preserves Rule 12(b)(1) and (6) defenses as its First and Second Affirmative Defenses. (Doc. 6, at 11.)  As a result, the Board's Motion is fully consistent with Rule 12(b), which provides that "[n]o defense or objection is waived by joining it with one or more other defenses or objections in a responsive pleading."  Rule 12(b), Fed.R.Civ.P.  Under any reasonable analysis, the Board has not waived the right to seek dismissal of this action on grounds of lack of subject-matter jurisdiction or failure to state a claim upon which relief can be granted.

The law is clear that "generally, as between state and federal courts, … the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction." *Ambrosia Coal & Constr. Co. v. Morales*, 368 F.3d 1320, 1328 (11th Cir. 2004) (citation omitted). Nonetheless, "[f]ederal courts should abstain from exercising their jurisdiction if doing so would disregard the comity between the States and the National Government." *Wexler v. Lepore*, 385 F.3d 1336, 1339 (11th Cir. 2004) (citation and internal quotation marks omitted). This doctrine is known as *Younger* abstention. "The *Younger* doctrine … is an extraordinary and narrow exception to the duty of a district court to adjudicate a controversy properly before it." *Green v. Jefferson County Com'n*, 563 F.3d 1243, 1251 (11th Cir. 2009) (citations and internal quotation marks omitted). Although *Younger* abstention was traditionally utilized in the criminal context, "its principles are fully applicable to noncriminal judicial proceedings when important state interests are involved." *31 Foster Children v. Bush*, 329 F.3d 1255, 1274 (11th Cir. 2003) (citation and internal quotation marks omitted); *see also New Orleans Public Service, Inc. v. Council of the City of New Orleans*, 491 U.S. 350, 367-68, 109 S.Ct. 2506, 105 L.Ed.2d 298 (1989) ("*NOPSI*") ("our concern for comity and federalism has led us to expand the protection of *Younger* beyond state criminal prosecutions, to civil enforcement proceedings").[2]

"A court may abstain from granting injunctive relief under *Younger* where: (1) the state proceeding is ongoing; (2) the proceeding implicates an important state interest; and (3) there is an adequate opportunity to raise a constitutional challenge in the state court proceedings." *Chen ex rel. V.D. v. Lester*, 2010 WL 339789, *4 (11th Cir. Feb. 1, 2010); *see also 31 Foster Children*, 329 F.3d at 1274 (identifying these same factors as governing determination of whether *Younger* abstention applies). Plaintiffs' opposition to the Motion to Abstain focuses on the first factor; indeed, there appears to be no colorable basis in fact or law for disputing that the second and third factors are satisfied here.[3]

---

[2] In light of these clear, binding holdings that *Younger* abstention is properly extended to the civil context, plaintiffs' contention that defendants are attempting "to stretch *Younger* beyond its logical bounds" because there is no "pending state criminal prosecution" (doc. 77, at 8) is inaccurate and unavailing.

[3] To be sure, plaintiffs do assert that the ongoing state-court juvenile proceedings "do not implicate Alabama's interest in the administration of its judicial system." (Doc. 77, at (Continued)

        *2.*      *The "Ongoing State Proceeding" Requirement.*

Again, *Younger* abstention is appropriate in a civil case only where there is an ongoing state proceeding. As a factual matter, there is no "ongoing state proceeding" at this time. Plaintiffs did not file judicial actions in Alabama juvenile courts, although they could have done so pursuant to Alabama Code § 12-15-115(b)(2). Nonetheless, the Board contends that this requirement is satisfied here because the completed administrative proceedings and the availability of state judicial review are properly viewed in the aggregate as a single unitary proceeding for *Younger* purposes. Under the "unitary proceeding" rationale, the state proceeding is still ongoing because plaintiffs have not seen it through to conclusion of the state judicial review proceedings. Plaintiffs ridicule this argument, scoffing that "Defendants invoke a hypothetical lawsuit to justify the application of a nonexistent rule." (Doc. 77, at 1.) In

---

8.) But plaintiffs do not elaborate on this remark. At any rate, the Court readily finds that this case involves just the kind of important state interest that may justify *Younger* abstention. *See, e.g., 31 Foster Children*, 329 F.3d at 1275 (second factor satisfied where state proceedings involved dependency petitions relating to foster children); *Chen*, 2010 WL 339789, at *4 ("Because family relations and matters of child custody are important state interests, the second … factor is satisfied."); *Hudson v. Campbell*, 663 F.3d 985, 988 (8th Cir. 2011) ("important state interest" criterion for *Younger* abstention satisfied because "Missouri Medicaid has an important interest in administering benefits in a manner that ensures that those of its citizens who are in need of and who are eligible for those benefits receive them"); *see generally Wisconsin v. Yoder*, 406 U.S. 205, 213, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972) ("Providing public schools ranks at the very apex of the function of a State."). Plaintiffs' argument appears to rest on the premise that the only state interests that matter for *Younger* abstention purposes are those relating to administration of the state judicial system. This is incorrect. *See NOPSI*, 491 U.S. at 364 (all that is required is "that the State have a legitimate, substantial interest in its pending proceedings"); *31 Foster Children*, 329 F.3d at 1275 ("Proceedings necessary for the vindication of important state policies *or* for the functioning of the state judicial system … evidence the state's substantial interest in the litigation.") (citation omitted and emphasis added); *San Jose Silicon Valley Chamber of Commerce Political Action Committee v. City of San Jose*, 546 F.3d 1087, 1094 (9th Cir. 2008) (explaining that "[t]he importance of the interest is measured by considering its significance broadly, rather than by focusing on the state's interest in the resolution of an individual's case," and indicating that preserving the integrity of horse racing is an example of an important state interest justifying *Younger* abstention) (citations omitted). In short, plaintiffs cannot reasonably suggest that state proceedings relating to discipline of Alabama public school students do not implicate important state interests for *Younger* abstention purposes.

actuality, however, the Board's position is much stronger – and is backed by much more authoritative heft – than plaintiffs' dismissive, off-the-cuff rejoinder admits.

The First, Third, Fourth, Seventh and Eighth Circuits have all adopted the "unitary proceeding" reasoning touted by the Board to deem state proceedings ongoing as a matter of law for *Younger* purposes where state judicial review is available from a final administrative proceeding, even where a plaintiff has not availed itself of that judicial review mechanism. *See Hudson v. Campbell*, 663 F.3d 985, 988 (8th Cir. 2011) ("Missouri law provides for administrative, circuit court, and appellate review of Medicaid eligibility decisions, …, remedies that Hudson has not yet exhausted, and thus Hudson's underlying state proceeding is ongoing" for *Younger* abstention purposes); *Laurel Sand & Gravel, Inc. v. Wilson*, 519 F.3d 156, 167 (4th Cir. 2008) ("we hold that whereas here Laurel seeks to invalidate a state judgment [entered via administrative order] by filing a federal action and circumventing state-court judicial remedies, the state proceedings remain 'pending' within the meaning of *Younger* abstention."); *Maymo-Melendez v. Alvarez-Ramirez*, 364 F.3d 27, 35 (1st Cir. 2004) ("*Younger* now has to be read as treating the state process … as a continuum from start to finish."); *Majors v. Engelbrecht*, 149 F.3d 709, 713 (7th Cir. 1998) (explaining that *Younger* precludes federal intervention in state appellate proceedings when a state court loser files a federal suit in lieu of appealing the decision to a state appellate court, and that although "the proceedings here are administrative, not judicial," that is "a distinction without a difference"); *O'Neill v. City of Philadelphia*, 32 F.3d 785, 791 (3rd Cir. 1994) (holding that "state proceedings remain 'pending,' within the meaning of *Younger* abstention, in cases … where a coercive administrative proceeding has been initiated by the State in a state forum, where adequate state-court judicial review of the administrative determination is available to the federal claimants, and where the claimants have chosen not to pursue their state-court judicial remedies, but have instead sought to invalidate the State's judgment by filing a federal action"). This reasoning represents the majority view on the subject. *See, e.g., San Jose Silicon Valley Chamber of Commerce Political Action Committee v. City of San Jose*, 546 F.3d 1087, 1093-94 (9th Cir. 2008) (characterizing as the "majority rule" the proposition "that the administrative proceeding and the possibility for state court review are to be viewed as one unitary proceeding").

In response, plaintiffs do not argue that the majority view is misguided, nor do they make any showing that the Eleventh Circuit has not adhered or has signaled that it would not adhere to

that majority view.[4]  They do not indicate that the majority view cases are wrongly decided, and do not urge this Court to find that the minority view is better reasoned or more persuasive.  Given the paucity of briefing on this point, the Court declines to wade into that morass *sua sponte*, but will accept the majority rule espoused by the *O'Neill* line of precedents as supplying the rule of decision herein.[5]

In response to the *O'Neill* line of cases, plaintiffs state in conclusory fashion that those authorities are distinguishable because they "involved state judicial or quasi-judicial administrative proceedings where *Younger* abstention would at least arguably have been appropriate."  (Doc. 77, at 5.)  Plaintiffs provide the Court with no indication of what they mean by "quasi-judicial administrative proceedings," nor do they articulate why the school disciplinary proceedings at issue here would not fall into that category.  For that matter, plaintiffs do not even

---

[4]  To be sure, plaintiffs assert that "controlling 11th Circuit precedent is consistent with the position that *Younger* abstention is not appropriate where no state case is pending following a final decision by a state administrative agency."  (Doc. 77, at 5.)  The Eleventh Circuit has never said that; indeed, plaintiffs identify no binding precedent in which that tribunal has even hinted at such a result.  Nor do plaintiffs point to any Eleventh Circuit reasoning that they maintain is in any way <u>inconsistent</u> with the majority rule as set forth by the five appellate courts identified by the Board and discussed *supra*.  Simply put, the Court has no reason to believe – and plaintiffs have offered none – that the Eleventh Circuit would break rank with the majority of its brethren on this question.

[5]  More than two decades ago, the Supreme Court declined to rule definitively on the issue.  *See NOPSI*, 491 U.S. at 369 (where city council argued that "the litigation, from agency through courts, is to be viewed as a unitary process that should not be disrupted, so that federal intervention is no more permitted at the conclusion of the administrative stage than during it," stating that "[w]e will assume, without deciding, that this is correct").  Similarly, here, plaintiffs do not ask this Court to determine the legal validity of the "unitary proceeding" theory of *Younger* abstention, much less offer cogent arguments championing the minority view.  At best, plaintiffs merely list a few of the minority-rule precedents in a footnote, with no discussion or analysis.  (Doc. 77, at 5 n.4.)  Federal courts do not develop parties' legal arguments for them.  *See, e.g., Fils v. City of Aventura*, 647 F.3d 1272, 1284 (11th Cir. 2011) ("district courts cannot concoct or resurrect arguments neither made nor advanced by the parties"); *Continental Motors, Inc. v. Jewell Aircraft, Inc.*, --- F. Supp.2d ----, 2012 WL 3113136, *5 n.13 (S.D. Ala. July 31, 2012) ("Continental has not made or developed such an argument, and this Court cannot and will not do so on a litigant's behalf.").  Given plaintiffs' election not to contest the validity of the majority rule in any meaningful way, this Court will accept and apply the *O'Neill* line of authorities (*i.e.*, the majority rule), without embarking on a *sua sponte* analysis of which competing line of precedent is more persuasive.

explain why, under *Younger*, they believe the character of the administrative proceedings matters. Such a fragmentary, undeveloped argument does not form a viable basis for opposing the Motion to Abstain in this case. *See generally Pears v. Mobile County*, 645 F. Supp.2d 1062, 1081 n.27 (S.D. Ala. 2009) ("The parties … cannot be heard to balk if the undersigned does not perform their research and develop their arguments for them."); *York v. Day Transfer Co.*, 525 F. Supp.2d 289, 301 n.10 (D.R.I. 2007) ("It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones.") (citation omitted); *Federal Ins. Co. v. County of Westchester*, 921 F. Supp. 1136, 1139 (S.D.N.Y. 1996) ("Under the adversary system, it is counsel's responsibility to explain why these points have legal merit; the Court does not serve as counsel's law clerk.").[6]

Next, plaintiffs cite Eleventh Circuit authorities and assert that "[i]n each of these cases, a case in state court was already under way or decided but available to appeal, which was a necessary ground for *Younger* abstention." (Doc. 77, at 6.) Plaintiffs may well have accurately characterized the procedural posture of these cases. But they have not explained why that posture mattered. In other words, they have presented neither argument nor authority supporting their proposition that an actual state judicial proceeding being underway as a factual matter is "a

---

[6] Reading between the lines, it appears that plaintiffs may be attempting to exploit the remedial/coercive distinction addressed in certain quarters of the case law. *See, e.g., Brown ex rel. Brown v. Day*, 555 F.3d 882, 888 n.5 (10th Cir. 2009) ("we will use the dichotomy between remedial and coercive administrative proceedings … as the touchstone for determining whether the administrative proceeding is the type of proceeding that merits *Younger* abstention. We prefer the coercive/remedial distinction because our sister circuits tend to use that articulation."). But federal appellate courts are far from unanimous in ascribing dispositive significance to whether the state proceedings are coercive or remedial. Just last year, for example, the Eighth Circuit clarified its position that "[a]lthough we have recognized the existence of the coercive-remedial distinction in other of our abstention cases …, we have not considered the distinction to be outcome determinative," and noted that it has "afforded *Younger* deference to the state administrative proceedings without classifying the proceeding as coercive or remedial." *Hudson*, 663 F.3d at 987-88. Plaintiffs have not articulated reasoning or explanation for any of the following: (i) why, as a matter of law, the coercive/remedial framework properly applies here; (ii) on which side of the coercive/remedial line the underlying state proceedings in this case rest, and why; and (iii) what the nature, form and content of the state administrative proceedings were, so that a reasoned determination could be made as to whether said proceedings are properly classified as coercive or remedial. What plaintiffs have provided, instead, is only the barest shell of an argument.

necessary ground for *Younger* abstention." Certainly, plaintiffs do not point to holdings or dicta by the Eleventh Circuit suggesting that in the absence of an actual, live state-court judicial proceeding, *Younger* abstention does not apply. And, as discussed *supra*, they offer no reason to believe that the Eleventh Circuit would not adopt the "unitary proceeding" notion that the majority of appellate courts have embraced to find the "ongoing proceeding" requirement satisfied where, as here, the administrative proceeding is completed and the plaintiff has a right to invoke state judicial review, but instead files a § 1983 action in federal court. Thus, merely stating (as plaintiffs do) that, to date, the Eleventh Circuit has addressed *Younger* abstention only in cases where a state-court judicial proceeding is underway or already decided tells us nothing about whether the Eleventh Circuit does or would confine its use of the *Younger* doctrine to that procedural context, when so many of its sister courts have expanded it to embrace the very set of circumstances presented in this case.

For all of these reasons, the Court agrees with the Board that there is an ongoing state proceeding, inferred as a matter of law on a "unitary proceeding" theory, for *Younger* abstention purposes because plaintiffs could have obtained judicial review of the challenged disciplinary proceedings in Alabama's juvenile courts, but chose to come to federal court instead.

        3.     The "Undue Interference" Requirement.

Plaintiffs' fallback position is that, even if ongoing state judicial proceedings are deemed to exist (as the Court has found), *Younger* abstention remains unwarranted because this action would not unduly interfere with the state proceedings. After careful consideration of the parties' arguments, the Court agrees with plaintiffs that the "undue interference" prerequisite to abstention is not satisfied here.

"[T]he Supreme Court has made clear that the [*Younger*] abstention doctrine is not triggered in a civil context unless the federal injunction requested would create an *undue* interference with state proceedings." *Green*, 563 F.3d at 1251 (citation and internal quotation marks omitted); *see also 31 Foster Children*, 329 F.3d at 1276 ("we join our sister circuits in explicitly stating that an essential part of the first ... factor in *Younger* abstention analysis is whether the federal proceeding will interfere with an ongoing state court proceeding. If there is no interference, then abstention is not required."). The Eleventh Circuit has found the requisite quantum of interference to trigger *Younger* abstention when "plaintiffs are seeking relief that would interfere with the ongoing state ... proceedings by placing decisions that are now in the

hands of the state courts under the direction of the federal district court." *31 Foster Children*, 329 F.3d at 1278 (first factor satisfied where requested declaratory judgment and injunction would take responsibility for state's child dependency proceedings away from state courts and place it under federal court control). "The relief sought need not directly interfere with an ongoing proceeding … in order for *Younger* abstention to be required." *Id.* at 1276.

Plaintiffs argue that *Younger* abstention is inappropriate because this "undue interference" requirement is not satisfied here. In their view, nothing about the pendency of this federal § 1983 action would inhibit or prevent state courts from hearing any claims that plaintiffs may put before them, and no remedy contemplated in this case would culminate in federal oversight of or infringement on state court functions. The Board counters that the "undue interference" prerequisite to *Younger* abstention is satisfied here because "Duplicative Legal Proceedings Interfere With State Judicial Proceedings." (Doc. 78, at 3.) In other words, defendant claims that the mere existence of duplication, by itself, is tantamount to undue interference.[7] Unquestionably, the concern that duplicative legal proceedings might reflect negatively on state courts' ability to resolve constitutional issues was an animating force behind the *Younger* doctrine.[8] But duplication of proceedings does not constitute *per se* undue interference for purposes of the *Younger* doctrine. The Eleventh Circuit has made clear that "[t]he *Younger* doctrine does not require abstention merely because a federal plaintiff, alleging a constitutional violation in federal court, filed a claim under state law, in state court, on the same

---

[7] Defendant makes this point explicit in its principal brief, wherein it argues as follows: "[H]ad the Plaintiffs filed Petitions in Juvenile Court, they could have sought the identical constitutional relief it now seeks [*sic*] in Federal Court. Thus, the decree being requested by the Plaintiffs in the Federal proceedings inevitably would interfere with those ongoing juvenile proceedings." (Doc. 72, at 5-6 (internal marks and emphasis omitted).)

[8] *See, e.g., Village of DePue, Ill. v. Exxon Mobil Corp.*, 537 F.3d 775, 783 (7th Cir. 2008) ("The rule in *Younger* … is concerned with preventing duplicative legal proceedings … and the negative implication that state courts are unable to enforce constitutional principles.") (citations and internal quotation marks omitted); *Gilbertson v. Albright*, 381 F.3d 965, 971-72 (9th Cir. 2004) (recognizing that *Younger* abstention is concerned with interference that "results in duplicative legal proceedings, and can readily be interpreted as reflecting negatively upon the state courts' ability to enforce constitutional principles") (citations and internal quotation marks omitted); *Hayse v. Wethington*, 110 F.3d 18, 20 (6th Cir. 1997) (noting that federal intervention in state proceedings as to which appellate review has not been completed is "a direct aspersion on the capabilities and good faith of state appellate courts") (citation omitted).

underlying facts." *Wexler*, 385 F.3d at 1340. In *Wexler*, the district court did what the Board urges this Court to do here, to-wit: made a finding "that the relief sought by Appellants would directly interfere with the state proceeding: seemingly by potentially rendering moot the state proceeding." *Id.* at 1341. The Eleventh Circuit reversed, reasoning that there was no undue interference inherent in the pendency of parallel state and federal proceedings because "[a] dispositive decision by either court does not offend the respectful relationship between state and federal courts, nor would it place the district court in the role of supervisor of state litigation or the state court." *Id.*; *see also NOPSI*, 491 U.S. at 373 ("It is true, of course, that the federal court's disposition of such a case may well affect, or for practical purposes pre-empt, a … state-court action. But there is no doctrine that the availability or even the pendency of state judicial proceedings excludes the federal courts."). Contrary to the Board's argument, mere duplication of proceedings between federal and state courts does not constitute the sort of interference that suffices to show "undue interference" in a *Younger* abstention analysis.

Binding precedent is clear: The kind of interference that matters for *Younger* purposes is that which jeopardizes the comity between state courts and federal courts. Again, the basic function of this doctrine is that of "preventing federal courts from being the grand overseers of state courts and court-like administration." *Wexler*, 385 F.3d at 1341; *see also Joseph A. ex rel. Corrine Wolfe v. Ingram*, 275 F.3d 1253, 1271 (10th Cir. 2002) (*Younger* abstention is designed to avoid "an ongoing federal audit of state … proceedings" or a decision that "would have the effect of a federal court telling a state court how to run an ongoing criminal prosecution") (citations omitted). That is to say, the kind of interference with which *Younger* is concerned is not the possibility that a federal court might moot a pending state proceeding by beating a state court to the punch on an issue that is pending before both of them in parallel proceedings, but is rather the entry of federal rulings that "usurp the state courts' ability to perform their judicial functions." *Wexler*, 385 F.3d at 1341 (citations and internal quotation marks omitted). Thus, the bare existence of a parallel state action does not warrant *Younger* abstention "unless the requested federal relief would result in meticulous and burdensome federal oversight of state

court or court-like functions." *Id.* at 1340.  This is not such a case; therefore, the "undue interference" requirement is not satisfied, and *Younger* abstention is unavailable.[9]

### III.  Conclusion.

Upon careful review of the relief requested by plaintiffs and the effect that such relief (if granted) would have on state court proceedings, the Court concludes that this action does not and would not have the effect of unduly interfering in state proceedings.  The requested federal relief would not render federal courts the grand overseers of Alabama juvenile courts and court-like administration.  It would not usurp state courts' ability to perform their judicial functions.  And it would not inevitably interfere with state court proceedings.  Accordingly, the comity principles undergirding *Younger* abstention are not implicated here.  Under these circumstances, this Court declines to apply that "extraordinary and narrow exception to the duty of a district court to adjudicate a controversy properly before it."  *Green*, 563 F.3d at 1251 (citations omitted).  For all of these reasons, defendant's Motion to Abstain and Dismiss (doc. 72) is **denied**.

---

[9]  In arguing otherwise, the Board would liken this case to *31 Foster Children v. Bush* via a conclusory statement that "Plaintiffs' federal proceedings would interfere with the state juvenile proceedings by fundamentally changing the disposition and oversight of children." (Doc. 72, at 6.)  This case bears not even passing resemblance to *31 Foster Children*.  If plaintiffs prevail on their federal constitutional claims, then the Board will be subject to a federal injunction requiring it to provide written notice and a hearing to students before imposing long-term suspensions.  Neither this Court nor any other would be intruding on those proceedings in individual cases, stripping state courts of their authority to decide them, or telling state courts what to do.  By contrast, in *31 Foster Children*, the relief requested would have "tak[en] the responsibility for a state's child dependency proceedings away from state courts and put[] it under federal court control."  329 F.3d at 1279.  Specifically, the requested declaratory and injunctive relief would have effectively resulted in federal courts making approval and amendment decisions concerning a particular child's case plan, even though state law conferred authority on state courts to approve, monitor and amend the plans.  *Id.* at 1278.  Moreover, the *31 Foster Children* plaintiffs wanted "to have the district court appoint a panel and give it authority to implement a systemwide plan to revamp and reform dependency proceedings in Florida, as well as the appointment of a permanent children's advocate to oversee that plan."  *Id.* at 1279.  The relief sought by plaintiffs in this case is far less intrusive than the sweeping shift of control from state to federal courts that was contemplated in *31 Foster Children*.  More to the point, the relief requested by plaintiffs here simply does not implicate the comity concerns that underlie the *Younger* doctrine.  Comity does not require that federal courts yield to state courts as a matter of course whenever the same constitutional issue is presented to both.  And nothing about the relief sought here would constitute the kind of invasive, disruptive federal court oversight or entanglement in state-court proceedings that constitutes undue interference.

DONE and ORDERED this 30th day of August, 2012.

s/ WILLIAM H. STEELE  
CHIEF UNITED STATES DISTRICT JUDGE