**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **M.R.,** *et al.***,** | ) | |
| | ) | <u>**PUBLISH**</u> |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION 11-0245-WS-C** |
| | ) | |
| **BOARD OF SCHOOL COMMISSIONERS** | ) | |
| **OF MOBILE COUNTY,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**ORDER**

This matter comes before the Court on Plaintiffs' Motion for Class Certification (doc. 84). The Motion has been briefed, and the parties have been afforded a full opportunity to present evidence and argument in support of their respective positions on the class certification issue. The Motion is now ripe for disposition.

**I.     Background.**

This putative class action is brought by seven Mobile County Public School System ("MCPS") students against the Board of School Commissioners of Mobile County (the "Board") alleging certain constitutional deprivations. All of the named plaintiffs have been long-term suspended (meaning that they were suspended for a period exceeding 10 consecutive school days) from the MCPS schools they attend. The well-pleaded factual allegations of the Amended Complaint state that these students were not given proper notice or a hearing by the Board before such suspensions were imposed. In plaintiffs' view, the Fourteenth Amendment requires that "school administrators must provide students with notice and a fair hearing before punishing them with long-term suspensions" (doc. 91, ¶ 1), yet plaintiffs received no such procedural safeguards. Plaintiffs maintain that there is a "custom and practice of many school administrators in the MCPSS of long-term suspending students without first providing notice of proposed suspensions and hearings so that students and parents can challenge those suspensions." (*Id.*, ¶ 2.) The Amended Complaint alleges that this purported custom and practice violates students' procedural due process rights guaranteed under the Fourteenth Amendment.

Significantly, the Amended Complaint specifies with crystalline clarity that plaintiffs do not seek an award of monetary damages.  Rather, their "Prayer for Relief" is confined to declaratory and injunctive relief, including a declaration that the Board's custom and practice of imposing long-term suspensions without notice and a hearing violate the procedural due process guarantees of the Fourteenth Amendment, as well as an injunction requiring the Board to provide written notice and a hearing before the imposition of long-term suspensions.  (Doc. 91, at 38.)  In other words, the seven named plaintiffs in this case are not asking for money, but are instead seeking an order from this Court obligating the Board to require schools to provide notice and a hearing before long-term suspensions are imposed in the MCPS system from this moment forward.[1]

The named plaintiffs do not proceed solely in their own names; rather, their pleadings make clear that they also purport to be bringing this action against the Board on behalf of a class of similarly situated students.  In the "Class Allegations" section of the Amended Complaint, plaintiffs propose the following class definition:  "All current and future MCPSS students who have been or may be suspended for more than ten consecutive school days (1) without being provided a written notice of proposed suspension ('notice'), (2) without being provided a due process hearing attended by both the student and his/her parent/guardian ('hearing'), or (3) without being provided both notice and hearing."  (Doc. 91, ¶ 288.)  Plaintiffs have now moved for certification of this proposed class under the procedure prescribed by the Federal Rules of Civil Procedure.  Defendant opposes class certification.

## II. Analysis.

### A. Rule 23 Standard.

Plaintiffs' Motion for Class Certification is governed by the standards set forth in Rule 23, Fed.R.Civ.P.  *See Valley Drug Co. v. Geneva Pharmaceuticals, Inc.*, 350 F.3d 1181, 1187 (11th Cir. 2003) (explaining that Rule 23 furnishes "legal roadmap" which courts follow in

---

[1]      Plaintiffs reconfirm these intentions in filings in support of their Rule 23 Motion, wherein they write the following:  "Plaintiffs seek declaratory and injunctive remedies.  They request that the Court (1) declare that the due process procedures for long-term suspensions in the 2010 Handbook violate the Fourteenth Amendment, and (2) grant equitable relief, including requiring Defendant to provide both notice and hearing before imposing long-term suspensions, and requiring Defendant to monitor and supervise compliance with due process requirements. … Plaintiffs do not seek any money damages."  (Doc. 86, at 5.)

assessing propriety of class certification).  In that regard, the Eleventh Circuit has instructed that "[a] district court must conduct a rigorous analysis of the rule 23 prerequisites before certifying a class." *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1266 (11th Cir. 2009) (citations omitted). Although this inquiry is not intended to be a preliminary adjudication of the merits,[2] it is also true that "[f]requently that 'rigorous analysis' will entail some overlap with the merits of the plaintiff's underlying claim.  That cannot be helped." *Wal-Mart Stores, Inc. v. Dukes*, --- U.S. ---, 131 S.Ct. 2541, 2551, 180 L.Ed.2d 374 (2011); *see also Fisher v. Ciba Specialty Chemicals Corp.*, 238 F.R.D. 273, 296 (S.D. Ala. 2006) ("this Circuit's jurisprudence recognizes that merits and Rule 23 issues are often intertwined, such that addressing Rule 23 criteria often requires some foray into the merits").

"For a district court to certify a class action, the named plaintiffs must have standing, and the putative class must meet each of the requirements specified in Federal Rule of Civil Procedure 23(a), as well as at least one of the requirements set forth in Rule 23(b)." *Klay v. Humana, Inc.*, 382 F.3d 1241, 1250 (11th Cir. 2004) (footnote omitted); *see also Valley Drug*, 350 F.3d at 1188 ("Failure to establish any one of [the Rule 23(a)] factors and at least one of the alternative requirements of Rule 23(b) precludes class certification."). It is well settled that "[t]he burden of proof to establish the propriety of class certification rests with the advocate of the class." *Valley Drug*, 350 F.3d at 387; *see also Vega*, 564 F.3d at 1267 ("a plaintiff still bears the burden of establishing every element of Rule 23"); *De Leon-Granados v. Eller and Sons Trees, Inc.*, 497 F.3d 1214, 1220 (11th Cir. 2007) ("A party seeking to maintain a class action bears the burden of demonstrating that class certification is proper.").[3]  As such, it is plaintiffs' responsibility to show that all of the prerequisites for class certification are satisfied here (*i.e.*, that class certification is appropriate under Rule 23).

---

[2]       *See, e.g., Morrison v. Booth*, 763 F.2d 1366, 1371 (11th Cir. 1985) (concurring with district court's assessment that it "could not conduct a preliminary inquiry into the merits of a suit in order to determine whether it may be maintained as a class action"); *Fisher v. Ciba Specialty Chemicals Corp.*, 238 F.R.D. 273, 296 (S.D. Ala. 2006) ("At this preliminary stage, the Court may not pass on the merits of plaintiffs' claims.").

[3]       "Rule 23 does not set forth a mere pleading standard.  A party seeking class certification must affirmatively demonstrate his compliance with the Rule – that is, he must be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact, etc." *Wal-Mart Stores*, 131 S.Ct. at 2551.

Here, the Motion for Class Certification may be resolved in its entirety by examination of the questions of standing and the Rule 23(b) factors. Accordingly, the analysis will focus on these particular issues as briefed in the parties' class certification submissions.

### B.   Standing.

As a threshold matter, the Board challenges whether plaintiffs have Article III standing to pursue their claims for injunctive and declaratory relief. In this Circuit, "it is well-settled that prior to the certification of a class, and technically speaking before undertaking any formal typicality or commonality review, the district court must determine that at least one named class representative has Article III standing to raise each class subclaim." *Prado-Steiman ex rel. Prado v. Bush*, 221 F.3d 1266, 1279 (11th Cir. 2000); *see also Murray v. U.S. Bank Trust Nat'l Ass'n*, 365 F.3d 1284, 1288 n.7 (11th Cir. 2004) ("just as a plaintiff cannot pursue an individual claim unless he proves standing, a plaintiff cannot represent a class unless he has standing to raise the claims of the class he seeks to represent").[4]

To establish standing to satisfy the "case or controversy" requirement for Article III purposes, a plaintiff must show that "(1) [he] has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *GeorgiaCarry.Org, Inc. v. Georgia*, 687 F.3d 1244, 1251 (11th Cir. 2012) (citations omitted). The critical issue here is whether plaintiffs have stated an injury in fact that is redressable by the relief they seek. Again, plaintiffs are not petitioning for a backward-looking award of money damages; rather, the sole requested relief consists of a declaration that the long-term suspension procedures outlined in the 2010 student handbook violate the Fourteenth Amendment, and a forward-looking injunction requiring the Board to provide students with notice and a hearing before imposing long-term suspensions henceforth.

---

[4]   "The existence of standing is crucial because we as a federal court are constitutionally bound to only entertain arguments that we have been given the authority to decide." *American Civil Liberties Union of Florida, Inc. v. Dixie County, Fla.*, 690 F.3d 1244, 1247 (11th Cir. 2012). "In the absence of standing, a court is not free to opine in an advisory capacity about the merits of a plaintiff's claims, and the court is powerless to continue." *Hollywood Mobile Estates Ltd. v. Seminole Tribe of Florida*, 641 F.3d 1259, 1265 (11th Cir. 2011) (citation omitted).

"In order to demonstrate that a case or controversy exists to meet the Article III standing requirement when a plaintiff is seeking injunctive or declaratory relief, a plaintiff must allege facts from which it appears there is a substantial likelihood that he will suffer injury in the future." *Malowney v. Federal Collection Deposit Group*, 193 F.3d 1342, 1346 (11th Cir. 1999).[5] No doubt, the named plaintiffs have extensively alleged a past injury (*i.e.*, they were long-term suspended without being afforded the process that they claim is constitutionally due). "Injury in the past, however, does not support a finding of an Article III case or controversy when the only relief sought is a declaratory judgment." *Malowney*, 193 F.3d at 1348. "This is so because logically, a prospective remedy will provide no relief for an injury that is, and likely will remain, entirely in the past." *Focus on the Family v. Pinellas Suncoast Transit Authority*, 344 F.3d 1263, 1275 (11th Cir. 2003) (citations and internal marks omitted). Thus, "a prayer for injunctive and declaratory relief requires an assessment, at this stage in the proceeding, of whether the plaintiff has sufficiently shown a real and immediate threat of future harm. … [P]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief." *Elend v. Basham*, 471 F.3d 1199, 1207 (11th Cir. 2006) (citations omitted).[6] Given the type of relief

---

[5]     *See also Williams v. Board of Regents of University System of Georgia*, 477 F.3d 1282, 1302 (11th Cir. 2007) ("[b]ecause injunctions regulate future conduct, a party has standing to seek injunctive relief only if the party alleges, and ultimately proves, a real and immediate – as opposed to a merely conjectural or hypothetical – threat of future injury") (citation omitted); *Koziara v. City of Casselberry*, 392 F.3d 1302, 1305 (11th Cir. 2004) ("For a plaintiff seeking prospective relief to have standing, he must show a sufficient likelihood that he will be affected by the allegedly unlawful conduct in the future.") (citations and internal quotation marks omitted); *Focus on the Family v. Pinellas Suncoast Transit Authority*, 344 F.3d 1263, 1274 (11th Cir. 2003) ("where a plaintiff seeks these types of prospective relief, it must demonstrate a real and immediate threat of future injury to satisfy the injury in fact requirement") (citations and internal quotation marks omitted). As a broad proposition, the Supreme Court has observed that "for purposes of assessing the likelihood that state authorities will reinflict a given injury, we generally have been unwilling to assume that the party seeking relief will repeat the type of misconduct that would once again place him or her at risk of that injury." *Honig v. Doe*, 484 U.S. 305, 320, 108 S.Ct. 592, 98 L.Ed.2d 686 (1988).

[6]     "The binding precedent in this circuit is clear that for an injury to suffice for prospective relief, it must be imminent." *Elend*, 471 F.3d at 1207; *see also Bowen v. First Family Financial Services, Inc.*, 233 F.3d 1331, 1340 (11th Cir. 2000) (observing that a "perhaps or maybe chance" of an injury occurring is not enough for standing).

they seek, the injury in fact that plaintiffs must show is a likelihood of <u>future</u> injury, not merely that they were long-term suspended without due process sometime in the past.

In response to the Board's standing challenge, plaintiffs persuasively argue that they do, indeed, face a sufficient likelihood of future injury to satisfy the Article III standing test. "Article III standing must be determined as of the time at which the plaintiff's complaint is filed." *Focus on the Family*, 344 F.3d at 1275.  The well-pleaded allegations of the Complaint (doc. 1) reflect that the Board-approved MCPS Student Handbook and Code of Conduct dated June 2010 (the "2010 Handbook") applied to all plaintiffs and omitted any requirement that notice be given or that due process hearings be held prior to imposition of long-term suspensions. (Doc. 1, ¶¶ 38-44.)  Plaintiffs have further alleged that all of them were long-term suspended without notice or a hearing.  (*Id.*, ¶ 1.)  To rebut defendant's argument that they face no realistic threat of future injury, plaintiffs make the following showing: (i) some 392 MCPS students received multiple long-term suspensions during the period of 2009 through 2012 (doc. 99, ¶ 4); (ii) of the 225 students who were long-term suspended between February 1, 2011 and March 31, 2012 without a notice letter or hearing, some 82 of them (or 36.4%) were long-term suspended more than once (doc. 99, ¶ 5); (iii) of the seven named plaintiffs, at least two (C.H. and G.H.) received multiple long-term suspensions without notice and a conference (doc. 91, ¶¶ 8-9); and (iv) one of those plaintiffs (C.H.) received a second long-term suspension without notice and a conference in April 2012, during the pendency of this very lawsuit (*id.*, ¶ 8).  In the aggregate, these facts demonstrate that long-term suspensions are recurring punishments meted out by the Board for recurring student misconduct, and that the Board's failure to provide notice and hearing before imposing such suspensions is likewise a recurring phenomenon.

Plaintiffs' showing establishes a sufficient likelihood of future harm to satisfy the standing threshold.  Under applicable precedent, "the redressability requirement will usually be satisfied where there is evidence that the plaintiff is likely to encounter the same injurious conduct in the future." *Doe v. Kearney*, 329 F.3d 1286, 1292 (11th Cir. 2003).  How likely must "likely" be to give rise to Article III standing?  The Eleventh Circuit has explained that "[t]o be likely enough, the threatened future injury must pose a 'realistic danger' and cannot be merely hypothetical or conjectural.  How likely is enough is necessarily a qualitative judgment … and courts should look for guidance from precedent in the analogical style of the common law

tradition." *Florida State Conference of N.A.A.C.P. v. Browning*, 522 F.3d 1153, 1161 (11th Cir. 2008) (citations omitted).

For example, in *City of Los Angeles v. Lyons*, 461 U.S. 95, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983), the plaintiff sought a permanent injunction against a municipal police department whose members had applied a "chokehold" on him without provocation or justification. The Supreme Court found no Article III standing, reasoning that "even assuming that Lyons would again be stopped for a traffic or other violation in the reasonably near future, … [w]e cannot agree that the 'odds' … that Lyons would not only again be stopped for a traffic violation but would also be subjected to a chokehold without any provocation whatsoever are sufficient to make out a federal case for equitable relief." 461 U.S. at 108 (citation omitted). By contrast, in *Honig v. Doe*, 484 U.S. 305, 108 S.Ct. 592, 98 L.Ed.2d 686 (1988), the Supreme Court found standing where the plaintiff was a disabled student who sought an injunction to prevent school officials from unilaterally removing him from the classroom for misconduct. The Court explained that "we think it reasonable to expect that [the student] will again engage in the type of misconduct that precipitated this suit" and that "[w]e think it equally probable that, should he do so, [the student] will again be subjected to the same unilateral school action for which he initially sought relief." 484 U.S. at 321.

In a nutshell, then, "the relevant question is whether this case resembles *Honig*, where the Court found that a recurrence was sufficiently likely, or *Lyons*, where the Court held the risk of repeated injury to be too speculative." *Church v. City of Huntsville*, 30 F.3d 1332, 1338 n.2 (11th Cir. 1994). Plaintiffs' showing aligns this case more closely to the facts and circumstances presented in *Honig* than those found in *Lyons*. Indeed, their evidence is that significant numbers of MCPS students who are long-term suspended on one occasion without notice and hearing are subjected to later long-term suspensions, again without notice and hearing. That is, in fact, what happened to named plaintiff C.H., who was long-term suspended a second time without notice and hearing during the pendency of this lawsuit. Clearly, then, it is reasonable to conclude that one or more named plaintiffs are "likely to have another encounter with government officials of the kind which precipitated the complained of act." *Newsome v. Batavia Local School Dist.*, 842 F.2d 920, 923 (6th Cir. 1988). And plaintiffs' evidence that MCPS officials continue to impose long-term suspensions without notice and hearing demonstrates that "the government ordered or authorized the act" for standing purposes. *Id.* In sum, plaintiffs have all been long-term

suspended without notice and hearing before. They have shown a realistic danger that they will be long-term suspended without notice and hearing again in the future. The injury in fact and redressability prongs of Article III standing require nothing more.[7]

The Eleventh Circuit has opined on multiple occasions that "probabilistic harm is enough injury in fact to confer … standing in the undemanding Article III sense." *Florida State Conference*, 522 F.3d at 1163 (citing *Tennessee Valley Authority v. U.S. Environmental Protection Agency*, 278 F.3d 1184, 1207 (11th Cir. 2002)) (internal quotation marks omitted). That is precisely what plaintiffs have shown here; therefore, the Court is of the opinion that a recurrence of the harm alleged by plaintiffs is sufficiently likely that it confers standing on them to pursue claims against the Board for injunctive and declaratory relief to require that future MCPS long-term suspensions be preceded by notice and a hearing.[8]

_____

[7]        Two analogous decisions from the Eleventh Circuit support this conclusion. First, in *Church v. City of Huntsville*, 30 F.3d 1332 (11th Cir. 1994), the plaintiffs were homeless persons who sought an injunction barring a municipality from harassing or removing them because of their homeless status. The Eleventh Circuit found that *Church* was closer to *Honig* than to *Lyons* because the plaintiffs had alleged that (i) their involuntarily homeless status meant that they could not avoid future exposure to the city's policy of harassment and removal, and (ii) the city had a custom, practice and policy of arresting, harassing and interfering with homeless people for engaging in ordinary activities of daily life in public places. *Id.* at 1339. Second, in *Doe v. Kearney*, 329 F.3d 1286 (11th Cir. 2003), the plaintiffs were parents who sought to enjoin enforcement of a Florida statute that authorized emergency removal of children. Although the state had already temporarily removed the plaintiffs' children under that statute before and such removal would not necessarily occur again, the Eleventh Circuit found standing to be satisfied because plaintiff John Doe had been investigated twice by Florida's Department of Children and Family Services as "fitting a pattern of sexual offenders," such that "it seems reasonably likely that [the plaintiffs] could encounter future state action under" the statute. *Id.* at 1293. If the probabilistic harms at issue in *Church* and *Doe* were sufficient to support standing, then surely those alleged by plaintiffs in this case (who have shown that a significant percentage of MCPS students who have been long-term suspended without notice and a hearing receive subsequent long-term suspensions without notice and a hearing, including at least one named plaintiff who has been so affected during the pendency of this litigation) are adequate to satisfy the undemanding Article III burden of showing standing.

[8]        In a footnote, the Board suggests in passing that plaintiffs do not have a likelihood of future harm because the 2010 Handbook is "long moot." (Doc. 96, at 3 n.1.) "[T]he doctrine of mootness can be described as the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)." *Sheely v. MRI Radiology Network, P.A.*, 505 F.3d 1173, 1189 n.16 (11th Cir. 2007) (citation omitted); *see also National Ass'n of Boards of Pharmacy v.* (Continued)

### C.     Need for Class Certification under Rule 23(b)(2).

Notwithstanding the finding of Article III standing, plaintiffs are not entitled to class certification unless they "meet each of the requirements specified in Federal Rule of Civil Procedure 23(a), as well as at least one of the requirements set forth in Rule 23(b)." *Klay*, 382 F.3d at 1250.  Assuming (without deciding) that plaintiffs have satisfied the Rule 23(a) factors, their bid for class certification nonetheless founders on the shoals of Rule 23(b).

Plaintiffs' Motion identifies subsection (b)(2) as the prong of Rule 23(b) in play here. That rule allows class certification if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."  Rule 23(b)(2), Fed.R.Civ.P.[9] As the Supreme Court recently explained, "Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class.  It does not authorize class certification when each individual class member would be entitled to a *different* injunction

---

*Board of Regents of the University System of Georgia*, 633 F.3d 1297, 1309 n.24 (11th Cir. 2011) (similar).  If, in fact, plaintiffs' claims were limited to seeking declaratory and injunctive relief that the now-superseded 2010 Handbook violated their procedural due process rights even though current MCPS custom, practice and policy do not, the Board might have a point.  But plaintiffs have alleged that, notwithstanding the admitted language change in policies postdating the 2010 Handbook to provide for nominal inclusion of greater procedural safeguards, "there remains a persistent, widespread custom and practice of suspending students long-term without notice and/or hearing."  (Doc. 98, at 3.)  Elsewhere, plaintiffs insist that "[t]he facts of this case demonstrate that Defendant has not made any meaningful effort to shift its actual conduct to reflect the revised policy."  (*Id.* at 7.)  Simply put, this case is not confined to the 2010 Handbook, but instead extends to the Board's current practices and customs, which plaintiffs contend remain unchanged and violative of their procedural due process rights, irrespective of whether the 2010 Handbook has been supplanted by a new, different iteration of the challenged written policy.  On this record, then, defendant's off-hand suggestion of mootness because the 2010 Handbook has been superseded is not meritorious.

[9]     *See also M.D. ex rel. Stukenberg v. Perry*, 675 F.3d 832, 845 (5th Cir. 2012) ("We have interpreted this language to create two relevant requirements when a proposed class seeks classwide injunctive relief: (1) the class members must have been harmed in essentially the same way …, and (2) the injunctive relief sought must be specific.") (citations and internal quotation marks omitted); *Casa Orlando Apartments, Ltd. v. Federal Nat'l Mortg. Ass'n*, 624 F.3d 185, 198 (5th Cir. 2010) ("a Rule 23(b)(2) inquiry requires considering two factors: 1) whether the defendant's behavior is generally applicable to the class as a whole, and 2) whether injunctive relief predominates over monetary relief").

or declaratory judgment against the defendant."  *Wal-Mart Stores*, 131 S.Ct. at 2557; *see also Gooch v. Life Investors Ins. Co. of America*, 672 F.3d 402, 428 (6th Cir. 2012) ("The key to the (b)(2) class is the indivisible nature of the injunctive or declaratory remedy warranted – the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or to none of them.") (citations and internal quotation marks omitted).  Plaintiffs maintain that Rule 23(b)(2) is satisfied here because the Board violated their Fourteenth Amendment rights pursuant to a custom or policy to which all potential class members are subject, such that they seek declaratory and injunctive relief with respect to the entire class.

Defendant counters that class certification under Rule 23(b)(2) is unnecessary here.  After all, plaintiffs make clear that they seek "[a] single declaratory judgment by this Court that Defendant's policy and custom violate the Fourteenth Amendment, or a single injunction permanently enjoining Defendant from failing to provide both notice and a hearing."  (Doc. 86, at 13.)[10]  The Board's point, quite simply, is that it would be superfluous to certify a class here because, if plaintiffs prevail on the merits, their requested injunctive declaratory and injunctive relief would have precisely the same scope and effect regardless of whether a class is certified or not.  In other words, the Board argues, if this Court were to enter an injunction requiring the Board to provide notice and a hearing before imposing long-term suspensions, and a judicial declaration that failure to provide such procedural safeguards violates the Fourteenth Amendment, plaintiffs and potential class members would benefit equally with or without the overlay of class certification.

In rejoinder, plaintiffs scoff that no such "need" requirement exists under Rule 23(b)(2), and that any attempt to engraft same onto the rules would be "plainly inconsistent with the Federal Rules."  (Doc. 98, at 13.)  However, considerable authority demonstrates that, whether it is deemed a formal "requirement" or not, the necessity of the class mechanism to afford complete relief is a proper consideration in the Rule 23(b)(2) analysis.  One prominent commentator has remarked that it is commonplace for "the vast majority of courts" evaluating Rule 23(b)(2) class certification to consider the necessity for class relief, and that "the need

---

[10]     Plaintiffs acknowledge that their claims are isolated to these narrow issues, indicating that "[t]he Court's determination of the constitutionality of the challenged policy and practice will alone resolve the fundamental issues in this case."  (Doc. 86, at 9-10.)

requirement now seems well-accepted as an appropriate consideration when certifying a Rule 23(b)(2) action."  7A Charles Alan Wright *et al.*, *Federal Practice and Procedure* § 1785.2 (3d ed.).  A survey of the case law reveals that this common-sense notion has resonated with many federal courts, prompting them to deny class certification where the injunctive relief requested would inure to the benefit of prospective class members whether a class was certified or not.[11]  In

---

[11]     *See, e.g., Kansas Health Care Ass'n, Inc. v. Kansas Dep't of Social and Rehabilitation Services*, 31 F.3d 1536, 1548 (10th Cir. 1994) ("This court has recognized the line of authority indicating that a class certification is unnecessary if all the class members will benefit from an injunction issued on behalf of the named plaintiffs. … We think it clear that that is the case here.") (citations and internal quotation marks omitted); *Dionne v. Bouley*, 757 F.2d 1344, 1356 (1st Cir. 1985) ("We agree with those circuits which deny Rule 23(b)(2) certification where it is a formality or otherwise inappropriate. … [W]hen the same relief can be obtained without certifying a class, a court may be justified in concluding that class relief is not appropriate.") (citation and internal quotation marks omitted); *Casale v. Kelly*, 257 F.R.D. 396, 406 (S.D.N.Y. 2009) ("certification of a Rule 23(b)(2) class is unnecessary when prospective relief will benefit all members of a proposed class to such an extent that the certification of a class would not further the implementation of the judgment") (citation and internal quotation marks omitted); *Healey v. Murphy*, 2009 WL 6613209, *8 (D. Mass. Jan. 14, 2009) (rejecting Rule 23 motion where "[i]f those claims are successful, any injunctive or declaratory relief will inure to the benefit of all individuals who are currently confined at the facility.  Thus, class certification is not necessary ….."); *Arnett v. Strayhorn*, 515 F. Supp.2d 690, 698 (W.D. Tex. 2006) ("No useful purpose would be served by requiring this case to proceed as a class because all individuals who are not a part of this action, but who are aggrieved by the Texas Unclaimed Property Law in the same manner as Plaintiff, will have the benefit of this Court's ruling concerning the statute's constitutionality."); *Access Now Inc. v. Walt Disney World Co.*, 211 F.R.D. 452, 455 (M.D. Fla. 2001) ("Finally, the Court finds that class certification in this action is unnecessary.  The Plaintiffs are only seeking injunctive relief which, if granted, would necessarily benefit all other potential class members."); *Sokol v. New United Mfg., Inc.*, 1999 WL 1136683, *6 (N.D. Cal. Sept. 20, 1999) ("the Court declines to certify a class based only on these two policies [that are uniformly applied] because the class vehicle is not necessary to obtain the relief sought"); *Bacal v. Southeastern Pennsylvania Transp. Authority*, 1995 WL 299029, *5 (E.D. Pa. May 16, 1995) (observing the "lack of need approach to Rule 23(b)(2) which has been used by a number of courts of appeals" and explaining that "this approach allows district courts to deny class certification if that certification is not needed in order for plaintiffs to obtain the desired class-wide relief"); *Hall v. Burger King Corp.*, 1992 WL 372354, *11-12 (S.D. Fla. Oct. 26, 1992) (rejecting class certification under Rule 23(b)(2) on ground that "class certification is unnecessary when an individual can obtain injunctive or declaratory relief which would benefit the other class members because the relief ordered in connection with an individual's claim or action insofar as the Court may direct the defendant to make changes of such criteria or practices would of necessity inure to the benefit of others") (citation and internal quotation marks omitted).

the typical case, the district court weighs the benefits (if any) of class certification under Rule 23(b)(2) against the inherent burdens associated with transforming ordinary litigation into a class action.  Where the members of the proposed class would benefit from the relief sought by the individual plaintiffs even if no class were certified, those courts often find that the burdens outweigh the benefits and that class certification is properly denied as inappropriate.  *See, e.g., Ruiz v. Robinson*, 2012 WL 3278644, *2 (S.D. Fla. Aug. 9, 2012) (opining that the "vast majority of courts" view need "as an appropriate consideration" in Rule 23(b)(2) actions and finding that "the expense, due process considerations, and burden of maintaining a class action outweigh granting class certification" where, as here, the requested injunctive and declaratory relief "would equally benefit all members of the putative class") (citations and internal quotation marks omitted); *Mills v. District of Columbia*, 266 F.R.D. 20, 22-23 (D.D.C. 2010) (explaining that courts have broad discretion in deciding whether to allow a case to proceed as a class action, that "[o]ne factor that courts often consider is whether there is a need for class certification," that "it is not uncommon for courts, in exercising their discretion, to deny class certification on that basis," that the relief sought by plaintiffs in facial challenge to program's constitutionality would afford sufficient protection all proposed class members, and that "the Court fails to see what would be achieved by certifying the proposed classes other than to needlessly burden this litigation"); *Access Now Inc. v. Walt Disney World Co.*, 211 F.R.D. 452, 455 (M.D. Fla. 2001) ("The complexity and expense of a class action is not necessary in this case as the Plaintiffs may achieve by injunction all relief which would inure to similarly situated persons without the necessity of class certification.").

The Eleventh Circuit has never expressly stated whether it recognizes a necessity requirement in the Rule 23(b)(2) analysis.  However, the clear majority rule is that "need" is a proper consideration (even if not technically a "requirement" for class certification), and that class certification may be properly denied where a class is unnecessary to obtain the full measure of relief sought, such that it is not appropriate to bog down the litigation with the expense, delay, complexity and burden of class certification when there is no corresponding benefit to implementation of the resulting judgment.[12]  More importantly, binding precedent lends strong

---

[12]      As noted previously, Wright & Miller opine that the "vast majority" of federal courts do consider necessity in the Rule 23(b)(2) context.  Even commentators who express (Continued)

support to the notion that it is appropriate for district courts to consider the benefits and burdens in making a Rule 23(b)(2) certification decision, and to deny class certification where those benefits are insubstantial.  In particular, the old Fifth Circuit wrote as follows:  "We find it unnecessary to determine the answer to this [class certification] question, however, for whether or not appellants are entitled to class action treatment, the decree to which they are entitled is the same. … [T]he very nature of the rights appellants seek to vindicate requires that the decree run to the benefit not only of the named plaintiffs but also for all persons similarly situated. … Even with the denial of class action status, the requested injunctive and declaratory relief will benefit not only the individual appellants and the nonprofit corporation but all other persons subject to the practice under attack."  *United Farmworkers of Florida Housing Project, Inc. v. City of Delray Beach, Florida*, 493 F.2d 799, 812 (5th Cir. 1974).[13]  In other words, the *United*

--------

hostility to the necessity analysis begrudgingly admit that (i) "[a]s of 2012, courts in six circuits have applied some version of the necessity analysis, … holding that because an individual case could secure class-wide injunctive relief, class certification was unnecessary," (ii) additionally, there is "one circuit [that] has rejected a *formal* necessity requirement" while still recognizing that it may be appropriate to weigh necessity as part of the Rule 23(b)(2) "appropriateness" analysis, and (iii) "courts in three other circuits" have rejected the requirement altogether.  2 William B. Rubenstein, *Newberg on Class Actions* § 4:35 (5th ed.).  Thus, even by *Newberg*'s tally, the circuit score is no worse than 7 – 3 in favor of the propriety of denying Rule 23(b)(2) class status when the same relief can be obtained without certifying a class, at least in the absence of countervailing considerations.

[13]      Plaintiffs understandably seek to minimize the harmful impact of *United Farmworkers* on their Rule 23 Motion.  In that regard, they point to the Fifth Circuit's comment in a footnote seven years later that "[t]his Court has not confronted the question directly" of whether a need requirement exists.  *Johnson v. City of Opelousas*, 658 F.2d 1065, 1070 n.5 (5th Cir. 1981).  However, *Johnson* furnishes little solace to plaintiffs because (i) it was decided after October 1, 1981, and is therefore not binding in the Eleventh Circuit; (ii) that same footnote recited decisions from a half-dozen jurisdictions that have adopted a "need" rationale and only one (the Seventh Circuit) that has rejected it, such that even *Johnson* seemed to acknowledge the clear majority view; and (iii) notwithstanding that the procedural posture of the case meant that the issue was not presented "directly" in *United Farmworkers*, that decision's language and reasoning unambiguously echo the line of authorities that have recognized a "need" factor in the Rule 23(b)(2) analysis.  To that last point, the *United Farmworkers* panel reasoned that the class certification ruling was inconsequential because the requested injunction and declaration would inure to the benefit of all similarly situated persons either way.  This mode of thinking is the rallying cry of courts that have declined to certify classes under Rule 23(b)(2) where putative class members stand to benefit from the requested injunction even if the expensive, time- (Continued)

-13-

*Farmworkers* court found that it did not matter whether the case should have been certified as a class action, because relief granted to the individual plaintiffs would necessarily inure to the benefit of potential class members. This is precisely the Board's point in the case at bar.

Recall that in the Amended Complaint, plaintiffs request a declaration that the Board's custom and practice of imposing long-term suspensions without notice and a hearing "violate the procedural due process guarantees of the Fourteenth Amendment," as well as an injunction requiring the Board to provide written notice and a hearing before imposing such suspensions. (Doc. 91, at 38.) So what plaintiffs seek is a judicial determination that the Board's practice of suspending students on a long-term basis without notice and a hearing violates due process, and an order that the Board provide such procedural safeguards henceforth. Those remedies would be identical whether this action is certified as a class action under Rule 23(b)(2) or not. They would inure to the benefit of current and future MCPS students, whether those students are labeled members of a class or not. Tellingly, plaintiffs do not argue otherwise. It is therefore an uncontroverted and apparently uncontested point that the same result could be achieved by individual litigation that would occur using the Rule 23 mechanism.

In light of these circumstances, what then would be the point of invoking the burdensome machinery of class certification in this case? *See Bond v. Dentzer*, 325 F. Supp. 1343, 1352 (N.D.N.Y. 1971) ("It makes me wonder at times why the complexities of Federal Rule of Procedure 23 are entered into when the declaration of unconstitutionality for one would, or at least should, in effect proclaim unconstitutionality for all …."). Without question, there may be cases where the "all-for-one, one-for-all" nature of the injunctive relief sought may not warrant denial of class certification because of other extenuating circumstances. *See, e.g., Dionne v. Bouley*, 757 F.2d 1344, 1356 (1st Cir. 1985) (reciting examples of when class certification may be proper even when the same relief could be obtained without certifying a class); Wright, *supra*, at § 1785.2 (recognizing possibility that, in a particular case, "even if the ultimate judgment in an individual action would benefit all affected by defendant's conduct, there [may be] other reasons that support the need for class relief"). Notably missing from plaintiffs' filings, however, is any

---

consuming and burdensome machinery of class certification is not activated. So whether it "confronted the question directly" or not, *United Farmworkers* provides a compelling insight into where the sympathies of the appellate court lie.

identification of such factors or circumstances that might favor class treatment in this case even though the same relief could, for all practical purposes, be obtained through an individual injunction.[14]

The point is straightforward: By the express terms of Rule 23(b)(2), a plaintiff seeking class certification under that subsection must show that "final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." *Id.*; *see also Dionne*, 757 F.2d at 1356 ("whether the action should be maintained as a class action depends on the *appropriateness* of injunctive or corresponding declaratory relief with respect to the class as a whole"). Class-based relief is not appropriate here. An injunction for the individual plaintiffs would amount to exactly the same relief as an injunction for an entire class because the decree sought by those plaintiffs would, by its very nature, "run to the benefit not only of the named plaintiffs but also for all other persons similarly situated." *United Farmworkers*, 493 F.2d at 812. What's more, plaintiffs have identified no other reasons that might warrant class-based relief in this case. On the other side of the equation, proceeding here as a class action would yield inefficiencies and complexities that would needlessly burden litigant and judicial resources alike, all for the sake of obtaining a class injunction that would be identical in scope, breadth and effect to an individual injunction awarded in favor of the individual plaintiffs alone. Plaintiffs have made no showing or argument to the contrary.

---

[14]     At best, plaintiffs proffer a vague assertion that "[i]ncluding all injured students in this litigation will ensure that all appropriate discovery can be taken – and that adjudication of Plaintiffs' claims and requested remedies is based on a robust factual record." (Doc. 98, at 14.) Plaintiffs do not elaborate, leaving the Court guessing as to how discovery would be impaired or the factual record deprived of "robustness" in the absence of Rule 23 certification. If plaintiffs are insinuating that the MCPS custom and practice works differently at different schools, such that discovery is needed at schools other than those attended by the named plaintiffs, that point would appear to undermine the commonality and typicality elements required by Rule 23(a). At any rate, all of the named plaintiffs have alleged that they were long-term suspended without hearing and notice, and that they remain vulnerable to future long-term suspensions without hearing and notice under the current MCPS custom and practice. Those facts, if proven at trial, would appear to support the injunctive and declaratory relief sought by plaintiffs, without the need to delve into much broader class-based discovery of the sort apparently envisioned by plaintiffs. In fact, avoiding the expansive discovery that accompanies class certification – where such discovery is unnecessary – is precisely the sort of circumstance that favors denial of Rule 23 status if the same relief could be obtained via individual injunction without utilizing the cumbersome class action machinery.

Under these circumstances, regardless of whether the Eleventh Circuit would recognize a formal "necessity requirement" or not, this Court is persuaded to exercise its discretion[15] against certifying a class because final injunctive relief or declaratory relief would not be appropriate with respect to the class as a whole for Rule 23(b)(2) purposes.  For aught that movants have shown, certifying a class here would multiply the workload, complexity, burdens and attorney's fees for the parties with no countervailing benefit to implementation of the judgment, given that the relief requested would inure to the benefit of similarly situated students even if they are not classified as class members.  Plaintiffs have neither contested that the ultimate judgment in an individual action would benefit all affected by the Board's alleged conduct even without class certification, nor identified other reasons that support the need for class relief.  Thus, plaintiffs have not met their "burden of demonstrating that class certification is proper."  *De Leon-Granados*, 497 F.3d at 1220.

**III.   Conclusion.**

For all of the foregoing reasons, plaintiffs' Motion for Class Certification (doc. 84) is **denied**.

DONE and ORDERED this 29th day of October, 2012.

s/ WILLIAM H. STEELE
CHIEF UNITED STATES DISTRICT JUDGE

---

[15]     *See generally Fitzpatrick v. General Mills, Inc.*, 635 F.3d 1279, 1282 (11th Cir. 2011) (district court's class certification order is reviewed for abuse of discretion and will not be disturbed as long as district court's reasoning stays within parameters of Rule 23); *De Leon-Granados v. Eller and Sons Trees, Inc.*, 497 F.3d 1214, 1218 (11th Cir. 2007) ("Questions concerning class certification are left to the sound discretion of the district court.") (citation omitted).